

FILED
JAN 0 4 2012
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN THE MATTER OF THE SEARCH OF )
)
The Residence located at ██ Alcoa, )
Alorton, Illinois. The structure is a single ) CASE NUMBER 12-mj-3005 DGW
story dwelling, light colored siding, with a )
two car garage with the front door facing )
towards the east. The residence is on the ) **FILED UNDER SEAL**
corner of McCallum Ct. and Alcoa Avenue. )
The residence is south of McCallum Court )
and West of Alcoa Avenue. )

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

I, Joseph R. Murphy, being duly sworn depose and say:

I am a Special Agent with the Federal Bureau of Investigation, and have reason to believe

that on the person or on the premises known as:

> The Residence located at ██ Alcoa, Alorton, Illinois. The structure is a single story
> dwelling, light colored siding, with a two car garage with the front door facing towards the
> east. The residence is on the corner of McCallum Ct. and Alcoa Avenue. The residence
> is south of McCallum Court and West of Alcoa Avenue. A photo of the premises subject
> to the search is affixed as "Attachment B."

in the Southern District of Illinois there is now concealed a certain person or property, namely:

### *SEE ATTACHED LIST, ENTITLED "ATTACHMENT A"*

which is constitutes evidence of the commission of a criminal offense or which is contraband, the

fruits of crime, or things otherwise criminally possessed, or which is designed or intended for use

which is or has been used as the means of committing an offense in violation of Title 18 United

States Code, Section 922(g) (possession of a firearm or firearm ammunition by a prohibited

1

person).

The facts to support the issuance of a Search Warrant are as follows:

### Introduction:

1.  I am a Special Agent (S/A) with the Federal Bureau of Investigation (FBI) and have been so employed for nearly thirteen years. Prior to joining the FBI, I had eight years of prior law enforcement experience as a police officer and detective with the Metropolitan Police Department, City of St. Louis, Missouri. I am currently assigned to the Springfield Division of the FBI, Fairview Heights Resident Agency (FHRA), Metro-East Public Corruption Task Force (MEPCTF), and as such am vested with the authority to investigate violations of Federal criminal laws, including Title 18 of the United States Code. I have primary investigative responsibilities for crimes occurring in the Southern District of Illinois. Affiant has been assisted in this investigation by the Internal Revenue Service/Criminal Investigations, as well as by other members of the FBI, and the Illinois State Police. This Affidavit is made in support of a warrant to search for and seize evidence. Because this affidavit is submitted for the limited purpose of establishing probable cause to obtain a search warrant, I have summarized a number of investigative findings, but I have not included the details of every aspect of the investigation.

2.  During the course of this investigation, several sources of information have been utilized. All of the information contained in this affidavit is based on the personal knowledge of your affiant and the investigative sources of your affiant or was relayed to your affiant by other members of the investigation team. The facts to support the issuance of a search warrant for the premises described above are as follows:

2



3. This investigation has utilized the assistance of ▮▮▮▮▮ who has recently worked both as a VOA police officer ▮▮▮▮▮ has been utilized as a cooperating witness by the FBI since ▮▮▮ ▮▮▮ has provided reliable information corroborated by numerous consensual recordings and physical evidence. ▮▮▮ provided information that has been corroborated by surveillance, recordings, and the statements of other witnesses and informants.

4. ▮▮▮ began working in an undercover capacity in a large scale public corruption investigation in Alorton, Illinois, and has provided a significant amount of information during the course of the investigation. ▮▮▮ has provided information over the course of ▮▮▮ and has proven to be a very reliable and effective informant.

### Background:

5. Randy McCallum, Sr. was elected mayor of the Village of Alorton (VOA) in April, 2005. On January 4, 2012, a search warrant was authorized for McCallum's home and office based upon a judicial finding of probable cause of his involvement in criminal activity.

6. Robert L. Cummings joined the Village of Alorton Police Department (VOAPD) in 1999, and was appointed Chief of Police by Randy McCallum, Sr. in 2006. Robert L. Cummings remained in that position until he pled guilty in US District Court for the Southern District of Illinois on February 24, 2011, for filing false tax returns from 1999-2006.

7. Robert L. Cummings has a brother named Ronnie Cummings. Ronnie Cummings has prior felony convictions for possession of a controlled substance from 2001, and manufacture or delivery of a controlled substance from 2002. He was sentenced to 4 years in the Illinois

3

Department of Corrections. Despite his status as a convicted felon, Randy McCallum appointed Ronnie Cummings to be the VOA Street Superintendent.

8. ▮ reported on April 27, 2009, that the mayor "directs" Ronnie Cummings to give orders for illegal conduct, and Ronnie sends messages to other departments or persons.

9. On October 2, 2009, ▮ met with federal agents and prosecutors for an interview ▮. ▮ ▮ advised that the mayor decides who receives tax increment financing (TIF) awards and that McCallum often receives kickbacks in exchange for TIF awards. ▮ advised that his ▮, received a TIF award in the amount of $2,500 - $3,000 and that ▮ was required to give $1,000 back to Randy McCallum. ▮ said he knew this to be true, because ▮ Ronnie Cummings served as a middle man to deliver the kickback to McCallum. On June 16, 2010, ▮ was subpoenaed to testify before the federal Grand Jury sitting in East St. Louis, Illinois. In addition to being questioned about ▮ ▮ was asked about whether ▮ had received any TIF awards. ▮ was initially evasive, but ▮ ultimately admitted that ▮ received $4,000 in TIF funds from the VOA and ▮ was required to kickback $1,000 of the money to Mayor McCallum. ▮ testified that she gave the money to ▮ Ronnie Cummings to deliver to the mayor on ▮ behalf. However, ▮ stated that ▮ knew McCallum received the money because ▮ went by McCallum's house and McCallum verified that he had received ▮ payment.

10. On or about March 2, 2011, ▮ was working at the VOAPD as an officer, however, he was still riding with a field training officer (FTO) and was not patrolling in his

4

individual capacity. While still being supervised by an FTO, ▇ was approached by Ronnie Cummings who advised ▇ that once he/she was riding in a squad car without supervision that ▇ would have to "pull some licks" and split the proceeds. This conversation occurred approximately two weeks before ▇ was scheduled to being riding alone. A "lick" is a well-known slang term used on the streets that refers to a robbery. When one "pulls a lick" or "hits a lick" it means that they have committed a robbery.

11. On October 22, 2011, Ronnie Cummings was recorded talking about the fact that he uses his position with the city to threaten a local hotel to shut them down for code violations unless he is given a hotel room at no charge.

### Firearms:

12. On several occasions during the course of the ongoing public corruption investigation, Ronnie Cummings has indicated to ▇ that he has a gun. During a prior consensually monitored conversation with ▇, Ronnie Cummings stated that he is going to fire his weapon through a bag to catch the shell casings. Later ▇ and Ronnie Cummings discuss Ronnie Cummings using a pillow case when firing his weapon as a more effect method to catch the spent shell casings that are ejected from a semi-automatic handgun. Ronnie Cummins indicated to ▇ that he would like to obtain an additional magazine for this weapon.

13. ▇ has previously stated that Ronnie Cummings was known to carry a firearm in his city vehicle.

14. Approximately late October or early November, Ronnie Cummings told ▇ that he wanted to obtain an extra "clip" for his gun. A "clip" is a common reference to the magazine that holds ammunition inside of a semi-automatic handgun.

5

15. For those reasons, federal law enforcement officers asked ▇ to talk with Ronnie Cummings to obtain additional intelligence regarding the firearm that he possesses. On January 4, 2012, ▇ phoned Ronnie Cummings to see if he was still interested in obtaining an additional magazine for his firearm. Ronnie Cummings did not answer but later called ▇ back.

16. When Ronnie Cummings called ▇ the caller ID showed that Ronnie Cummings was calling from phone number ▇, which ▇ knows to be Ronnie Cummings' cellular telephone. Cellular telephones are capable of storing call history logs to verify when calls are made.

17. Ronnie Cummings told ▇ he was at his residence. ▇ knows that Ronnie Cummings lives ▇ Alcoa, Alorton, IL (photo attached as Attachment B). ▇ has seen Ronnie Cummings's vehicle at this address on multiple prior occasions.

18. On January 4, 2010, ▇ drove to ▇ Alcoa, Alorton, IL to meet Ronnie Cummings at his home for the purpose of discussing ▇ obtaining a firearm magazine for Cummings. Prior to that meeting, ▇ had explained to Cummings that he needed to know the model number of his gun to ensure that he obtained a proper magazine that would fit into his gun.

19. When ▇ arrived at this address, ▇ Ronnie Cummings came of this residence and handed ▇ a magazine for a 9mm handgun loaded with live 9mm ammunition.

20. ▇ responded to Cummings that he thought Cummings had a different weapon and stated he believes there are two models of that particular weapon. To clarify which particular model of gun he owned, Ronnie Cummings stepped back into the house and ▇ saw him reach into a closet and retrieve a semi-automatic handgun. Ronnie Cummings examined the firearm and told ▇ that it was a Smith and Wesson firearm and he read the model number to ▇

6

21. Smith and Wesson firearms are manufactured outside of the state of Illinois.

22. Ronnie Cummings maintained control over the firearm, but ▇ ▇ left the residence with the magazine loaded with 9 mm ammunition. When ▇ left, Cummings said that he would like some additional ammunition for his weapon as well.

23. ▇ left the scene and went to the FBI office in Fairview Heights where he turned the magazine and ammunition over to federal authorities. A recording of the event was downloaded from a secret recording device at that time.

24. The above facts provide probable cause to believe that in the Southern District of Illinois, within the premises identified as

▇ Alcoa
Alorton, IL 62207

there is located the items set forth in Attachment "A" which is evidence of unlawful possession of a firearm or firearm ammunition by a prohibited person, in violation of Title 18 United States Code 922(g), within the scope of Rule 41(c) of the Federal Rules of Criminal Procedure as property subject to search and seizure.

FURTHER AFFIANT SAYETH NAU▇

Joseph R. Murphy, Special Agent
Federal Bureau of Investigation

7

Stephen Wiggington
United States Attorney

STEVEN D. WEINHOEFT
Assistant United States Attorney

State of Illinois )
                     ) SS.
County of St. Clair )

Sworn to before me, and subscribed in my presence on the 4th day of January, 2012, at East St. Louis, Illinois.

HON. DONALD G. WILKERSON
United States Magistrate Judge

8

**Attachment A**
**Items to be Seized**

1) FIREARMS: All firearms, firearm ammunition, shell casings, and other dangerous weapons.

2) PERSONAL ELECTRONIC MEDIA: Cellular telephones, smart phones, PDA's, and all information stored therein, either written or electronic – including text messages, emails, address books, call history logs, and calendars. Agents are authorized to seize personal electronic media from the person of Ronnie Cummings.

3) PROOF OF RESIDENCY: Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises subject to this warrant, to include: mail, deeds, leases or rental agreements, diaries, keys, identification documents, photographs or videotapes, utility and telephone bills, other account statements and bills, real estate tax statements, construction or improvement bills, materials purchase receipts, insurance documents, safety deposit box keys, and personal documents or photographs.

9

## Attachment B

▇ Alcoa, Alorton, IL 62207

